

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-1552-07

---

### THE STATE OF TEXAS

### v.

### DAVID MALDONADO, Appellee

---

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### NUECES COUNTY

---

KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. WOMACK, J., filed a concurring opinion in which COCHRAN, J., joined. JOHNSON, J., filed a concurring opinion. HOLCOMB, J., filed a dissenting opinion.

We must decide whether an officer introducing himself at the jail to a defendant who is represented by counsel constitutes an "initiation of communications" under *Michigan v. Jackson*.[1] We hold that it does not, and consequently, we affirm the judgment of the court of appeals.

---

[1] 451 U.S. 477, 484-85 (1981).

## I. BACKGROUND

The facts are not in dispute.[2]  On May 4, 2006, appellee was indicted for indecency with a child. That same day, he submitted a written request for the appointment of counsel, and counsel was appointed.[3]  On May 9, Detective Sergio Ramirez went to the jail to speak with appellee.  At that time, Detective Ramirez was unaware that counsel had been appointed or that appellee had been indicted.  Detective Ramirez requested that appellee be brought out to a large open area in the jail, which was used for processing new arrivals.  Immediately after the detective introduced himself, appellee handed over a folded letter and said that he had been waiting to talk to somebody.

Specifically, Detective Ramirez testified as follows regarding the sequence of events:[4]

Q. [By the prosecutor] When you arrived at the jail, what happens?

A. We arrive, I went up to the jailer and said I am here for David.  He said, okay,

---

[2]  In summary form, the court of appeals recited Detective Ramirez's account of events and concluded that the "only issues to be determined here are under what circumstances the suspect may communicate with police absent counsel after the attorney-client relationship has attached and what acts and statements constitute an 'initiation' of communication between a suspect and the police" and that these issues "must be reviewed de novo." *State v. Maldonado*, 2007 Tex. App. LEXIS 6581, 1-3 (Tex. App.– Corpus Christi, August 16, 2007).  Relying upon *State v. Ross*, 32 S.W.3d 853 (Tex. Crim. App. 2000), the dissent contends that the testimony presents conflicting factual inferences such that the trial court could have believed that events occurred differently than outlined in the court of appeals's opinion. But appellee adopts the court of appeals's recitation of the facts verbatim.  He is not claiming before us that the court of appeals failed to follow *Ross*.  Rather, he is simply claiming that the court of appeals came to the wrong legal conclusion based upon its own fact recitation.  We point out that the trial court's findings of fact do not deal with the question before us, the State had requested a supplemental fact finding that Detective Ramirez's account of the sequence of events was credible, and the trial court did not respond to the request.

[3]  The clerk's record contains an order appointing counsel that is dated May 4, 2006, but the trial court's findings state that counsel was appointed in open court on May 8, 2006.  This discrepancy does not affect our analysis.

[4]  This quotation is not contained in the court of appeals's opinion but is consistent with and supportive of its summary of events.

we's got him ready. They brought him out. I introduced myself and told him I am Detective Ramirez and this is Detective Flores. *At that time*, he handed me a letter that was folded. He said, I been waiting to talk to somebody, waiting to talk to you, something to that effect, and he handed me the letter. I asked him what is this. He says, that's what happened that night. So I said, you want to talk to me about what happened and he said yes. Okay. We have to go to the station. If you want to go to the station with me and he said yes. So we took him to the station.

Q. Let's back up. Did you identify yourself as a police officer?

A. Yes.

Q. *And what did you say to the defendant before he handed you the letter?*

A. *Just introduced myself.* I am Detective Ramirez. This is Detective Flores. He

said I have been waiting to talk to somebody or talk to you guys and he handed me

the letter.

(Emphasis added.) The above colloquy, occurring on direct examination, reveals that Detective

Ramirez did not bring up the subject of talking to appellee until after appellee handed him the letter.[5]

---

[5] Nothing in the later testimony set out in the dissent, occurring on cross-examination, indicates that the questions or answers were a chronological description of events. The final question in the excerpt does not even purport to ask when the events occurred in relation to each other. The answer, however, confirms that appellee gave Detective Ramirez the letter directly on the heels of his introduction:

Q. So when Mr. Maldonado was brought up to you, did you tell him who you were?

A. Yes, ma'am.

Q. Identified yourself?

A. Yes ma'am – yes sir.

Q. Did you tell him why you were there?

A. I told him that I was going to talk to him or we were going to talk. *When I introduced myself, he gave me the form, the document.*

Appellee had written the letter before his meeting with Detective Ramirez, voluntarily and without prompting from the police. At the police station, the detective took appellee's statement by video. Before giving his statement, appellee was advised of his *Miranda*[6] rights, which he waived. On May 10, appellee first met with counsel.

In a motion to suppress, appellee contended that his videotaped confession was taken in violation of his Sixth Amendment right to counsel. The trial judge granted the motion, and the State appealed. The court of appeals addressed the following two issues: "(1) under what circumstances a suspect may communicate with the police absent counsel after the attorney-client relationship has attached, and (2) whether the appellee's actions while in custody constituted an initiation of communication with the police."[7] Finding that both issues were mixed questions of law and fact that did not turn on credibility and demeanor, the court of appeals reviewed the issues *de novo*.[8] Determining that detective Ramirez's introduction of himself to appellee did not constitute "interrogation" because Ramirez had no reason to know that such conduct was reasonably likely to elicit an incriminating response,[9] the court of appeals concluded that appellee, not Ramirez, initiated the communication leading to the confession.[10] Consequently, the court of appeals reversed the trial

---

(Emphasis added).

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966); *see also* Tex. Code Crim. Proc. art. 38.22.

[7] *Maldonado*, 2007 Tex. App. LEXIS 6581 at 1.

[8] *Id.* at 3-4 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

[9] *Id.* at 8-11 (discussing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

[10] *Id.* at 11-17.

court's judgment granting the motion to suppress and remanded the case for further proceedings.[11]

## II. ANALYSIS

The parties agree that the outcome of this case turns upon who "initiated communications." Appellee contends that the police initiated communications by arranging for appellee to meet Detective Ramirez at the jail. The State contends that appellee initiated communications by presenting the letter and volunteering his desire to speak with the authorities.

The question of who initiated a communication between an accused and law enforcement first became important in *Edwards v. Arizona*, which held that an accused in custody who invokes his Fifth Amendment right to counsel under *Miranda* may not be questioned by law enforcement (in the absence of counsel) unless and until "the accused himself initiates further communication, exchanges, or conversations with the police."[12] In *Michigan v. Jackson*, the Supreme Court extended the *Edwards* initiation rule to an accused's invocation of his Sixth Amendment right to counsel, which attaches after a defendant has been formally charged.[13] The Court extended the rule to the Sixth Amendment context because it found "the reasons for prohibiting interrogation of an uncounseled prisoner who has asked for the help of a lawyer" to be "even stronger after he has been formally charged with an offense than before."[14] Because the Sixth Amendment guarantees the accused "the right to rely on counsel as a 'medium' between him and the State,"[15] "the Sixth

---

[11] *Id.* at 17.

[12] *Jackson*, 451 U.S. at 484-85.

[13] 475 U.S. 625 (1986).

[14] *Id.* at 631.

[15] *Id.* at 632 (quoting *Maine v. Moulton*, 474 U.S. 159, 176 (1985)).

Amendment right to counsel" at an "interrogation" that occurs after formal charges have been filed "requires at least as much protection as the Fifth Amendment right to counsel at any custodial interrogation."[16] Consequently, the Court held that "if police initiate interrogation after a defendant's assertion . . . of his [Sixth Amendment] right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."[17]

In articulating its holding in *Jackson*, the Supreme Court did not say that the rules in the Fifth and Sixth Amendment contexts were identical; rather the Supreme Court held that the Sixth Amendment context required a rule that was *at least* as protective. *Jackson* set a "floor" for what the Sixth Amendment required, but the Supreme Court and other courts would be left to determine whether and to what extent the Sixth Amendment rule would exceed that floor, conferring more protection than its Fifth Amendment counterpart. Obviously, the Sixth Amendment rule would not require a custodial setting: the *Jackson* initiation rule would apply, for example, even if the interrogation was not custodial because it was performed by an undercover officer or informant.[18]

The question the Supreme Court would next confront was whether, after the Sixth Amendment right to counsel has attached, the accused must invoke that right in order to trigger *Jackson*'s protections. The Supreme Court gave a qualified answer to that question in *Patterson v. Illinois*. There, the Court held that law enforcement could validly initiate communication and seek a waiver of counsel after a defendant's right to counsel had attached when the defendant had not

---

[16] *Id.* (citing *Massiah v. United States*, 377 U.S. 201 (1964), *United States v. Henry*, 447 U.S. 264 (1980), and *Moulton* in supporting discussion contained in next paragraph of its opinion).

[17] *Id.* at 636.

[18] *Patterson v. Illinois*, 487 U.S. 285, 296 n.9 (1988).

already invoked his right to counsel and was not yet represented by counsel.[19] "Preserving the integrity of an accused's choice to communicate with police only through counsel" did not require "barring an accused from making an *initial* election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone."[20] The Supreme Court suggested that the case would be different, even absent an invocation of the right to counsel, if a lawyer-client relationship had already been established: in that situation, "a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect."[21] Relying heavily on *Patterson* and *Powell v. Texas*,[22] we concluded in *Holloway v. State* that the Sixth Amendment did not permit the "police-initiated interrogation of an indicted accused who has retained or been appointed defense counsel" absent notice to defense counsel.[23]

The Supreme Court later made clear, however, that an existing attorney-client relationship under the Sixth Amendment did not prevent a defendant from unilaterally waiving his right to counsel, so long as the defendant initiated the communication. In answering a defendant's contention that statements taken in violation of *Jackson* should not be admissible for impeachment purposes, the Supreme Court said in *Michigan v. Harvey*, albeit in *dicta*: "But nothing in the Sixth

---

[19] 487 U.S. at 290 n.3, 291.

[20] *Id.* at 291 (emphasis in original).

[21] *Id.* at 290 n.3.

[22] 492 U.S. 680 (1989).

[23] 780 S.W.2d 787, 795 (Tex. Crim. App. 1989). We do not address in this case whether a defendant who had not requested counsel would have to do some act to accept an appointment or meet with counsel in order for an attorney-client relationship to be established. *See Patterson*, 487 U.S. at 290 n. 3 (noting "as a matter of some significance" that the accused "had not retained, or accepted by appointment, a lawyer to represent him"); *Holloway*, 780 S.W.2d at 796 (observing that the defendant "had been appointed counsel" and "had met with counsel").

Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney."[24] "Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will. To hold that a defendant is inherently incapable of relinquishing his right to counsel once it is invoked would be 'to imprison a man in his privileges and call it the Constitution.'"[25] In *Ripkowski v. State*, we adopted this *dicta* in answering a defendant's claim that his right to counsel prevented the State from using statements made by him to a jail psychiatrist whose services the defendant had sought.[26] We found that the defendant had "effectively relinquished his counsel's assistance by seeking out mental health treatment on his own."[27]

Although the Supreme Court cases discussed above focused mainly upon which party precipitated an "interrogation," the Supreme Court's Sixth Amendment "right to counsel" jurisprudence has historically employed different and broader terminology for the types of communication or communicative conduct that will trigger a Sixth Amendment violation. In *Massiah v. United States*, a case involving the use of an undercover informant to elicit a defendant's incriminating statements, the Court pointed to concurring opinions in *Spano v. New York*[28] for the proposition that a confession should be excluded as unconstitutionally obtained in violation of the

---

[24] 494 U.S. 344, 352 (1990).

[25] *Id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 280 (1942)).

[26] 61 S.W.3d 378, 384-87 (Tex. Crim. App. 2001).

[27] *Id.* at 387.

[28] 360 U.S. 315 (1959).

Sixth Amendment right to counsel when that confession was "deliberately elicited" by law enforcement.[29]  In *Brewer v. Williams*, the Court found that a police officer's "Christian burial speech" – in which no questions were asked – resulted in a Sixth Amendment violation when the defendant responded by giving the officers directions to the body of the victim.[30]  The Court found that the officer had "deliberately and designedly set out to elicit information from [the defendant] just as surely as – and perhaps more effectively than – if he had formally interrogated him."[31]  Whether the Court's use of the words "deliberately and designedly . . . elicit" was intended to convey broader meaning than mere "interrogation" may be unclear given the Court's acknowledgment that state courts in the case below recognized the "Christian burial speech" as "tantamount to interrogation."[32]   But subsequent cases have accorded more sweeping significance to the "deliberately elicited" language.

Citing *Massiah* and *Brewer*, the Court in *Edwards* suggested that a waiver of the Sixth Amendment right to counsel could not be inferred "from the mere response by the accused to overt or more subtle forms of interrogation *or other efforts to elicit incriminating information*."[33]  In *Rhode Island v. Innis*, the Supreme Court rejected the notion that the *Brewer* case was relevant to determining the meaning of "interrogation" under the Fifth Amendment because *Brewer* was a Sixth

---

[29]  *Massiah*, 377 U.S. at 204.

[30]  430 U.S. 387, 392-93, 398-401 (1977).

[31]  *Id.* at 399.  We note that the Court had no problem extending the holding of *Massiah* beyond the undercover informant scenario: "That the incriminating statements were elicited surreptitiously in the *Massiah* case, and otherwise here, is constitutionally irrelevant."  *Brewer*, 430 U.S. at 400.

[32]  *Id.* at 400.

[33]  451 U.S. at 484 n.8 (emphasis added).

Amendment case: "The definitions of 'interrogation' under the Fifth and Sixth Amendments, if indeed the term 'interrogation' is even apt in the Sixth Amendment context, are not necessarily interchangeable, since the policies underlying the two constitutional protections are quite distinct."[34] In *United States v. Henry*, the Court responded to a Government claim that *Brewer* had imposed an "affirmative interrogation" requirement as part of a *Sixth* Amendment inquiry by stating: "While affirmative interrogation, absent waiver, would certainly satisfy *Massiah*, we are not persuaded . . . that *Brewer* modified *Massiah*'s 'deliberately elicited' test."[35]

The Supreme Court again confronted the question of the scope of the "deliberately elicited" test in *Fellers v. United States*.[36] In *Fellers*, police officers came to the defendant's home and advised him that "they had come to discuss his involvement in methamphetamine distribution."[37] They also told the defendant that they had a federal warrant for his arrest, that he had been indicted, and that the indictment referred to coconspirators, whom the officers proceeded to name.[38] The defendant "then told the officers that he knew the four people and had used methamphetamine during his association with them."[39] Under those circumstances, the Supreme Court held, there was no

---

[34] *Innis*, 446 U.S. at 300 n.4.

[35] *Henry*, 447 U.S. at 271; *see also Moulton*, 474 U.S. at 175 n.11 (rejecting same contention made by Solicitor General as amicus, quoting from *Henry*)

[36] 540 U.S. 519 (2004).

[37] *Id.* at 521.

[38] *Id.*

[39] *Id.*

question that the officers had "deliberately elicited" the defendant's statements.[40]  The Court

explicitly rejected a lower court's determination that "interrogation" was a required element of a

Sixth Amendment "right to counsel" violation.[41]  In its discussion, the Supreme Court cited a

statement made in *Jackson* that "the Sixth Amendment provides a right to counsel . . . even when

there is no interrogation."[42]

But the Supreme Court's precedents recognize that "deliberate elicitation" involves some

conduct designed to obtain incriminating statements.  In *Henry*, the Court specifically refrained from

addressing the situation in which a device serves merely as a passive "listening post" or "where an

informant is placed in close proximity but makes no effort to stimulate conversations about the crime

charged."[43]  This latter situation was addressed in *Kuhlman v. Wilson*.[44]  The Supreme Court held

there that, to show a Sixth Amendment violation, "the defendant must demonstrate that the police

and their informant took some action, beyond merely listening, that was designed deliberately to

elicit incriminating remarks."[45]

So, to determine whether an officer initiated a communication for Sixth Amendment

purposes, we must determine whether the officer engaged in conduct designed to elicit an

---

[40]  *Id.* at 524; *see also Moulton*, 474 U.S. at 177 n.13 (reserving question of how to treat informant who "acts simply as a 'listening post'" and "does not participate in active conversation and prompt particular replies").

[41]  *Id.* at 524.

[42]  *Id.* (quoting *Jackson*)(ellipsis in *Fellers*, original lower case from *Jackson* used instead of bracketed capitalization in *Fellers*).

[43]  447 U.S. at 271 n.9.

[44]  477 U.S. 436 (1986).

[45]  *Id.* at 459.

incriminating response from the accused before the accused communicated information about the offense or his desire to convey information about the offense. The question we confront in the present case, then, is whether Detective Ramirez, by merely introducing himself, engaged in conduct designed to elicit incriminating information. We readily answer that question "no." Obviously, Detective Ramirez intended to talk with appellee, and if he had followed through with that intention before appellee had communicated his own intent to talk, then the *Jackson* rule could have been triggered. If Detective Ramirez had simply told appellee that he was investigating the offense for which appellee had been charged, without asking any questions, before appellee's own communication, that might well have been sufficient to constitute a "deliberate elicitation" under *Fellers*. But in this case, Detective Ramirez did not have the opportunity to do so because appellee spoke up so quickly.[46] We conclude that appellee initiated the communication, and as a result, was in a position to unilaterally waive his Sixth Amendment right to counsel.

---

[46] Relying upon *Moulton*, the dissent contends that Detective Ramirez's acts of arranging appellee to be brought to the open area of the jail at a time when counsel was not present amounts to a violation of the right to counsel. But *Moulton* explained that the right to counsel was violated when "the State's agent engaged Moulton in conversation about the charges pending against him." 474 U.S. at 177 n.14. Here, the detective had not yet engaged appellee in conversation about the pending charges when appellee handed over the letter and initiated the conversation on his own. The dissent says that Detective Ramirez intended to talk to appellee, but his subjective intent is not enough by itself to establish a violation of the right to counsel, and we cannot agree that subjective intent can transform into right-to-counsel violations acts that otherwise fall short. Finally, the dissent complains that the letter was not a confession, but was a self-serving explanation of the events that occurred that night. But a self-serving initiation of communications by the accused is still an initiation of communications by the accused. If the accused initiates communications, then he can unilaterally waive the right to counsel.

The judgment of the court of appeals is affirmed.

Delivered: June 4, 2008
Publish