

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00362-CR

**TIMOTHY PAUL LINER,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 413th District Court
Johnson County, Texas
Trial Court No. F41437**

## MEMORANDUM  OPINION

After being indicted by a grand jury for capital murder in the death of his infant son, Timothy Liner was found guilty of felony murder, sentenced to life in prison, and assessed a $10,000 fine.  Liner raises three issues on appeal.  We will affirm.

Liner and his wife Dayna lived in Burleson and had six-week-old twins, Mya and Tye.  While Dayna took Mya, the baby girl, to her mother's place of work to "show her off," Liner, who was unemployed at the time, stayed home at their apartment with Tye, the baby boy.  When Tye stopped breathing, Liner ran next door to call 9-1-1 for help,

and Burleson police, fire, and ambulance came. Liner initially said that Tye had choked on formula.

At the hospital, testing showed that Tye had brain hemorrhaging without external signs of injury. Liner then told Dayna that Tye had rolled off the couch onto the carpeted floor. When Dayna told Liner that the physician said that could not have caused Tye's brain injury, Liner then said he tripped and fell on the kitchen floor while carrying Tye. The hospital notified Burleson police that Tye's injuries were not accidental, and Sergeant Melvin McGuire came to the hospital in Fort Worth, where he arrested Liner late in the evening for the offense of injury to child (Tye soon died after being taken off of life support). Liner was booked at the Burleson Police Department jail, and after being given his statutory and *Miranda* warnings, Liner declined to talk with McGuire. Liner was then taken to the Johnson County jail, and he was arraigned the next morning. Liner requested and was given forms to request a court-appointed attorney. That afternoon, McGuire went to the Johnson County jail to obtain a voluntary urine sample from Liner, and Liner said he wanted to tell McGuire the truth. In a videotaped statement, Liner admitted to shaking Tye just before he stopped breathing.

## Suppression

Liner's first issue complains that the trial court erred in denying his motion to suppress the videotaped statement. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not

engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819. In the absence of explicit findings, the appellate court assumes the trial court

made implicit findings that support its ruling as long as those findings are supported by the record. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

Liner's motion to suppress asserted that his recorded interview with McGuire was taken in violation of article 38.21 and that Liner did not knowingly, intelligently, freely, and voluntarily waive his rights set out in section 2 of article 38.22. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.21, 38.22, §§ 2, 3(a)(2) (Vernon 2005). The trial court made written findings that sections 2 and 3 of article 38.22 were complied with and that Liner was not coerced or threatened to make his recorded statement. At the suppression hearing, Liner also argued to the trial court that his rights to remain silent and to counsel were violated by McGuire's reinitiating contact with Liner after Liner had said he did not want to talk to McGuire and after Liner had requested appointment of counsel. Liners's first issue restates these arguments. He does not argue article 38.21 on appeal.

Section 3 of article 38.22 sets forth the requirements to make oral custodial statements admissible at trial and, among other things, codifies the *Miranda* warnings required to be given prior to custodial confessions. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a). Before an oral statement may be admitted into evidence, the accused must be warned that: (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and

during any questioning; and (5) he has the right to terminate the interview at any time. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a). Section 3 also requires: (1) that an electronic recording of the statement, which may include a video recording, must be made; and (2) that prior to an accused's statement and, while the recording is being made, the accused must be provided his warnings and must knowingly, intelligently, and voluntarily waive the rights set forth in the warnings. *Id.* art. 38.22, §§ 2(a), 3(a)(1)(2).

At the suppression hearing, a magistrate testified that, the morning after Liner's arrest, he arraigned or "magistrated" Liner: he read Liner his rights, informed him of the charge against him, allowed him to fill out a form requesting a court-appointed attorney, and set Liner's bond. McGuire then testified that he went to Johnson County jail that afternoon to request a voluntary urine sample from Liner for drug analysis.[1] Liner agreed and gave the sample. McGuire did not otherwise seek to talk to Liner about the case, but as McGuire was filling out the urine-sample paperwork, Liner said that he wanted to talk to McGuire and tell him the truth. McGuire responded by making sure that Liner understood that it was Liner wanting to talk, and not McGuire soliciting Liner to talk, and that Liner had the right to not talk to him. Liner responded that he understood and still wanted to talk to McGuire.

McGuire took Liner to an interview room, turned on the video equipment, and read Liner his constitutional rights to a lawyer, to have a lawyer present, and to remain

---

[1] At trial McGuire said that the District Attorney's office had requested the urine sample. There was a suspicion of drug involvement because marijuana had been found in the Liner apartment.

silent and that anything he said could be used against him. Liner acknowledged that he understood his rights and wished to waive them, and he acknowledged that he did not want to talk to McGuire the night before but now wished to. In the video Liner said that he shook Tye out of frustration and that Tye then began to turn blue.

Citing *Maestas v. State,* 987 S.W.2d 59, 62 (Tex. Crim. App. 1999), and *Pecina v. State,* 268 S.W.3d 564 (Tex. Crim. App. 2008), Liner claims that McGuire failed to honor Liner's right to remain silent and to stop questioning and Liner's right to counsel.

> The admissibility of statements obtained after the person in custody has decided to remain silent depends, under *Miranda,* on whether his or her right to stop questioning was scrupulously honored. *Michigan v. Mosley,* 423 U.S. 96, 103, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In making this determination, we consider (1) whether the suspect was informed of his or her rights prior to the initial questioning, (2) whether the suspect was informed of the right to remain silent prior to the subsequent questioning, (3) the length of time between the initial questioning and the subsequent questioning, (4) whether the subsequent questioning focused on a different crime, and (5) whether police honored the suspect's initial invocation of the right to remain silent. *Maestas v. State,* 987 S.W.2d 59, 62 (Tex. Crim. App. 1999).

*Hallmark v. State,* 287 S.W.3d 223, 225-26 (Tex. App.—Eastland 2009, pet. ref'd).

The record shows that McGuire scrupulously honored Liner's right to remain silent, and it was Liner who told McGuire that he wanted to talk about the case. The trial court did not err in denying Liner's motion to suppress on the ground that Liner's Fifth Amendment rights to remain silent and against self-incrimination were violated.

As for Liner's right to counsel and McGuire's subsequent interaction with Liner, the issue is whether Liner or McGuire initiated the interrogation. *See Pecina,* 268 S.W.3d at 568; *Maldonado v. State,* 259 S.W.3d 184, 191 (Tex. Crim. App. 2008) ("So, to determine

whether an officer initiated a communication for Sixth Amendment purposes, we must determine whether the officer engaged in conduct designed to elicit an incriminating response from the accused before the accused communicated information about the offense or his desire to convey information about the offense.").

At the suppression hearing, McGuire testified it was Liner who initiated the desire to talk about the case, and Liner acknowledged on the video that he now wanted to talk to McGuire and waived his right to counsel. We assume an implied finding to this effect by the trial court. There thus was no violation of Liner's right to counsel so as to make the recorded statement constitutionally invalid, as Liner initiated the contact and waived his rights. *See Maldonado,* 259 S.W.3d at 191; *see also Montejo v. Louisiana,* --- U.S. ---, ---, 129 S.Ct. 2079, 2086-88, 173 L.Ed.2d 955 (2009); *Hughen v. State,* 297 S.W.3d 330, 335 (Tex. Crim. App. 2009) ("And when an accused is read his *Miranda* rights, which include the right to have counsel present during interrogation, and he agrees to waive those rights, that typically is sufficient to validly waive the Sixth Amendment right to have counsel present during interrogation."); *Hall v. State,* 303 S.W.3d 336, 342 (Tex. App.—Amarillo 2009, pet. ref'd); *id.* at 343 n.11 ("Further, even though an accused has invoked his right to counsel during custodial interrogation, the United States Supreme Court recognizes that the police may resume an interrogation without counsel if 'the accused himself initiates communication, exchanges, or conversations with the police.' *Edwards v. Arizona,* 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (emphasis added). *Accord Montejo,* --- U.S. ---, 129 S.Ct. at 2085-86, 2090; *Maldonado,* 259 S.W.3d at 188-89; *Cross v. State,* 144 S.W.3d 521, 528-30 (Tex. Crim. App. 2004).").

The trial court did not err in denying the suppression motion on Sixth Amendment right-to-counsel grounds.[2] We overrule Liner's first issue.

## Jury Charge

Liner's second issue asserts that the jury charge erroneously included and defined the lesser-included offense of felony murder. Liner was charged with the offense of capital murder, and in addition to that offense, the jury charge contained the lesser-included offenses of felony murder, injury to a child, manslaughter, and criminally negligent homicide. Liner objected to the felony-murder jury charge at trial. We first determine if there was error in the charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).

The jury charge contained the following:

A person commits the offense of Injury to a Child if he knowingly or recklessly causes serious bodily injury to a child. Such an offense is a felony offense.

…

A person commits the offense of felony murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

…

A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

A person acts recklessly or is reckless with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a

---

[2] Citing *State v. Consaul*, 960 S.W.2d 680 (Tex. App.—El Paso 1997, pet. ref'd), Liner argues that McGuire's seeking a urine sample from Liner is a "ludicrous" notion that was a pretext to initiate contact with Liner to get him to talk. The facts of *Consaul* are highly distinguishable, and nothing in the record supports Liner's allegation. Moreover, *Maldonado*, *Hughen*, and *Montejo* control the Sixth Amendment issue.

nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

…

Now bearing in mind the foregoing instruction, if you believe from the evidence beyond a reasonable doubt that the Defendant, TIMOTHY PAUL LINER, on or about February 14, 2007, in the County of Johnson and State of Texas, did then and there knowingly or recklessly commit or attempt to commit a Felony, to-wit: Injury to a Child, and in the course of and in furtherance of the commission or attempt, the Defendant knowingly or recklessly committed or attempted to commit an act clearly dangerous to human life, to wit: by shaking Tye Liner, or by striking Tye Liner with or against an object unknown to the Grand Jury, or by manner or means unknown to the Grand Jury, which caused the death of an individual, namely, Tye Liner, then you will find the Defendant guilty of the lesser-included offense of Felony Murder and so say by your verdict.

Felony murder is a lesser-included offense of capital murder. *Fuentes v. State,* 991 S.W.2d 267, 272 (Tex. Crim. App. 1999); *Gallegos v. State,* 715 S.W.2d 139, 142-43 (Tex. App.—San Antonio 1986, pet. ref'd); *see also Threadgill v. State,* 146 S.W.3d 654, 665 (Tex. Crim. App. 2004). And felony murder can be a lesser-included offense of capital murder when the underlying felony is injury to a child that includes the culpable mental state of "reckless." *See, e.g., Holley v. State,* 766 S.W.2d 254, 255-57 (Tex. Crim. App. 1989); *see also Flores v. State,* 215 S.W.3d 520, 530 (Tex. App.—Beaumont 2007), *aff'd,* 245 S.W.3d 432 (Tex. Crim. App. 2008). The felony-murder charge was not erroneous. We overrule Liner's second issue.

## Legal Sufficiency

In his third issue, Liner asserts that the evidence is legally insufficient to support the felony-murder guilt finding. When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether,

after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). Any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The jury found Liner guilty of felony murder. *See* TEX. PEN. CODE ANN. § 19.02(b)(3) (Vernon 2003). Liner suggests that the following evidence indicates that, "at worst," he was guilty of manslaughter:[3] After the birth of his twins, Liner wrote how happy and lucky he was; Dayna said that Liner had been a "good dad" who was "great" around children; Dr. Sisler, the pathologist who performed Tye's autopsy, testified that he thought Tye's head hit a soft object and there was "some shaking with the impact;" and Liner's written statement says that he never meant to hurt his son. The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State,* 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). The jury may believe all, some, or none of any witness's

---

[3] "A person commits an offense if he recklessly causes the death of an individual." TEX. PEN. CODE ANN. § 19.04(a) (Vernon 2003).

testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jaggers,* 125 S.W.3d at 670.

Moreover, Liner admitted to McGuire and to Dayna that he shook Tye out of frustration because he would not stop crying, and the physician testimony was that Tye's severe inter-cranial injuries were consistent with severe shaking and Tye's head possibly hitting a soft object. Dr. Sisler said that shaking a baby is dangerous because it causes bleeding and swelling that leads to death. Also, Liner was 31 years of age and had children from a previous relationship, which the State says suggests that Liner was aware of the substantial and unjustifiable risk of harm in shaking Tye but consciously disregarded that risk.

Viewing all of the evidence in the light most favorable to the verdict, we hold that a rational juror could find, beyond a reasonable doubt, that Liner was guilty of felony murder. We overrule Liner's third issue.

Having overruled all of Liner's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Affirmed
Opinion delivered and filed August 25, 2010
Do not publish
[CRPM]