IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00362-CR

 

Timothy Paul Liner,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 413th District
Court

Johnson County, Texas

Trial Court No. F41437

 



memorandum  Opinion



 








After being indicted by a grand jury for
capital murder in the death of his infant son, Timothy Liner was found guilty
of felony murder, sentenced to life in prison, and assessed a $10,000 fine. 
Liner raises three issues on appeal.  We will affirm.

Liner and his wife Dayna lived in Burleson
and had six-week-old twins, Mya and Tye.  While Dayna took Mya, the baby girl,
to her mother’s place of work to “show her off,” Liner, who was unemployed at
the time, stayed home at their apartment with Tye, the baby boy.  When Tye
stopped breathing, Liner ran next door to call 9-1-1 for help, and Burleson
police, fire, and ambulance came.  Liner initially said that Tye had choked on
formula.

At the hospital, testing showed that Tye
had brain hemorrhaging without external signs of injury.  Liner then told Dayna
that Tye had rolled off the couch onto the carpeted floor.  When Dayna told
Liner that the physician said that could not have caused Tye’s brain injury,
Liner then said he tripped and fell on the kitchen floor while carrying Tye. 
The hospital notified Burleson police that Tye’s injuries were not accidental,
and Sergeant Melvin McGuire came to the hospital in Fort Worth, where he
arrested Liner late in the evening for the offense of injury to child (Tye soon
died after being taken off of life support).  Liner was booked at the Burleson
Police Department jail, and after being given his statutory and Miranda
warnings, Liner declined to talk with McGuire.  Liner was then taken to the
Johnson County jail, and he was arraigned the next morning.  Liner requested
and was given forms to request a court-appointed attorney.  That afternoon,
McGuire went to the Johnson County jail to obtain a voluntary urine sample from
Liner, and Liner said he wanted to tell McGuire the truth.  In a videotaped
statement, Liner admitted to shaking Tye just before he stopped breathing.

Suppression

Liner’s first issue complains that the
trial court erred in denying his motion to suppress the videotaped statement.  We review a trial court’s
ruling on a motion to suppress evidence under a bifurcated standard of review. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).  In
reviewing the trial court’s decision, we do not engage in our own factual
review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); Best
v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The
trial judge is the sole trier of fact and judge of the credibility of the
witnesses and the weight to be given their testimony.  Wiede v. State,
214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000), modified on other grounds by State v.
Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost
total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor; and (2) application‑of‑law‑to‑fact
questions that turn on an evaluation of credibility and demeanor.  Amador,
221 S.W.3d at 673; Montanez v. State, 195 S.W.3d 101, 108-09 (Tex. Crim.
App. 2006); Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App.
2002).  But when application-of-law-to-fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo.  Amador, 221 S.W.3d at 673; Johnson,
68 S.W.3d at 652-53.

When reviewing the trial
court’s ruling on a motion to suppress, we must view the evidence in the light
most favorable to the trial court’s ruling.  Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court
makes explicit fact findings, we determine whether the evidence, when viewed in
the light most favorable to the trial court’s ruling, supports those fact
findings.  Kelly, 204 S.W.3d at 818-19.  We then review the trial court’s
legal ruling de novo unless its explicit fact findings that are supported
by the record are also dispositive of the legal ruling.  Id. at 819.  In the absence of explicit findings, the
appellate court assumes the trial court made implicit findings that support its
ruling as long as those findings are supported by the record.  Valtierra v.
State, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

Liner’s motion to suppress
asserted that his recorded interview with McGuire was taken in violation of
article 38.21 and that Liner did not knowingly, intelligently, freely, and
voluntarily waive his rights set out in section 2 of article 38.22.  See
Tex. Code Crim. Proc. Ann. arts.
38.21, 38.22, §§ 2, 3(a)(2) (Vernon 2005).  The trial court made written
findings that sections 2 and 3 of article 38.22 were complied with and that
Liner was not coerced or threatened to make his recorded statement.  At the
suppression hearing, Liner also argued to the trial court that his rights to
remain silent and to counsel were violated by McGuire’s reinitiating contact
with Liner after Liner had said he did not want to talk to McGuire and after
Liner had requested appointment of counsel.  Liners’s first issue restates
these arguments.  He does not argue article 38.21 on appeal.

Section
3 of article 38.22 sets forth the requirements to make oral custodial
statements admissible at trial and, among other things, codifies the Miranda
warnings required to be given prior to custodial confessions.  Tex. Code Crim. Proc. Ann. art. 38.22,
§ 3(a).  Before an oral statement may be admitted into evidence, the accused
must be warned that:  (1) he has the right to remain
silent and not make any statement at all and that any statement he makes may be
used against him at his trial;
(2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior
to and during any questioning; (4)
if he is unable to employ a lawyer, he has the right to have a lawyer appointed
to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any
time.  Tex. Code Crim. Proc. Ann. art. 38.22,
§ 2(a).  Section 3 also requires: (1) that an electronic recording of the
statement, which may include a video recording, must be made; and (2) that
prior to an accused’s statement and, while the recording is being made, the
accused must be provided his warnings and must knowingly, intelligently, and
voluntarily waive the rights set forth in the warnings.  Id. art. 38.22, §§
2(a), 3(a)(1)(2).

At the suppression hearing,
a magistrate testified that, the morning after Liner’s arrest, he arraigned or
“magistrated” Liner:  he read Liner his rights, informed him of the charge
against him, allowed him to fill out a form requesting a court-appointed
attorney, and set Liner’s bond.  McGuire then testified that he went to Johnson
County jail that afternoon to request a voluntary urine sample from Liner for
drug analysis.[1]  
Liner agreed and gave the sample.  McGuire did not otherwise seek to talk to
Liner about the case, but as McGuire was filling out the urine-sample
paperwork, Liner said that he wanted to talk to McGuire and tell him the truth. 
McGuire responded by making sure that Liner understood that it was Liner
wanting to talk, and not McGuire soliciting Liner to talk, and that Liner had
the right to not talk to him.  Liner responded that he understood and still
wanted to talk to McGuire.

McGuire took Liner to an
interview room, turned on the video equipment, and read Liner his
constitutional rights to a lawyer, to have a lawyer present, and to remain
silent and that anything he said could be used against him.  Liner acknowledged
that he understood his rights and wished to waive them, and he acknowledged
that he did not want to talk to McGuire the night before but now wished to.  In
the video Liner said that he shook Tye out of frustration and that Tye then began
to turn blue.

Citing Maestas v. State,
987 S.W.2d 59, 62 (Tex. Crim. App. 1999), and Pecina v. State, 268
S.W.3d 564 (Tex. Crim. App. 2008), Liner claims that McGuire failed to honor
Liner’s right to remain silent and to stop questioning and Liner’s right to
counsel.

The admissibility of
statements obtained after the person in custody has decided to remain silent
depends, under Miranda, on whether his or her right to stop questioning
was scrupulously honored.  Michigan v. Mosley, 423 U.S. 96, 103, 96
S.Ct. 321, 46 L.Ed.2d 313 (1975).  In making this determination, we consider
(1) whether the suspect was informed of his or her rights prior to the initial
questioning, (2) whether the suspect was informed of the right to remain silent
prior to the subsequent questioning, (3) the length of time between the initial
questioning and the subsequent questioning, (4) whether the subsequent
questioning focused on a different crime, and (5) whether police honored the
suspect’s initial invocation of the right to remain silent.  Maestas v.
State, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999).

 

Hallmark v. State, 287 S.W.3d 223, 225-26
(Tex. App.—Eastland 2009, pet. ref’d).

The record shows that
McGuire scrupulously honored Liner’s right to remain silent, and it was Liner
who told McGuire that he wanted to talk about the case.  The trial court did
not err in denying Liner’s motion to suppress on the ground that Liner’s Fifth
Amendment rights to remain silent and against self-incrimination were violated.

            As for Liner’s
right to counsel and McGuire’s subsequent interaction with Liner, the issue is
whether Liner or McGuire initiated the interrogation.  See Pecina, 268
S.W.3d at 568; Maldonado v. State, 259 S.W.3d 184, 191 (Tex. Crim. App.
2008) (“So, to determine whether an officer initiated a communication for Sixth
Amendment purposes, we must determine whether the officer engaged in conduct
designed to elicit an incriminating response from the accused before the
accused communicated information about the offense or his desire to convey information
about the offense.”).

At the suppression hearing,
McGuire testified it was Liner who initiated the desire to talk about the case,
and Liner acknowledged on the video that he now wanted to talk to McGuire and
waived his right to counsel.  We assume an implied finding to this effect by the
trial court.  There thus was no violation of Liner’s right to counsel so as to
make the recorded statement constitutionally invalid, as Liner initiated the
contact and waived his rights.  See Maldonado, 259 S.W.3d at 191; see
also Montejo v. Louisiana, --- U.S. ---, ---, 129 S.Ct. 2079, 2086-88, 173
L.Ed.2d 955 (2009); Hughen v. State, 297 S.W.3d 330, 335 (Tex. Crim.
App. 2009) (“And when an accused is read his Miranda rights, which
include the right to have counsel present during interrogation, and he agrees
to waive those rights, that typically is sufficient to validly waive the Sixth
Amendment right to have counsel present during interrogation.”); Hall v.
State, 303 S.W.3d 336, 342 (Tex. App.—Amarillo 2009, pet. ref’d); id.
at 343 n.11 (“Further, even though an accused has invoked his right to counsel
during custodial interrogation, the United States Supreme Court recognizes that
the police may resume an interrogation without counsel if ‘the accused himself
initiates communication, exchanges, or conversations with the police.’  Edwards
v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)
(emphasis added).  Accord Montejo, --- U.S. ---, 129 S.Ct. at 2085-86,
2090; Maldonado, 259 S.W.3d at 188-89; Cross v. State, 144 S.W.3d
521, 528-30 (Tex. Crim. App. 2004).”).

The trial court did not err
in denying the suppression motion on Sixth Amendment right-to-counsel grounds.[2]  We overrule Liner’s first issue.

Jury Charge

Liner’s second issue asserts
that the jury charge erroneously included and defined the lesser-included
offense of felony murder.  Liner was charged with the offense of capital
murder, and in addition to that offense, the jury charge contained the
lesser-included offenses of felony murder, injury to a child, manslaughter, and
criminally negligent homicide.  Liner objected to the felony-murder jury charge
at trial.  We first determine if there was error in the charge.  Hutch v.
State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).

The jury charge contained
the following:

A person commits the offense
of Injury to a Child if he knowingly or recklessly causes serious bodily injury
to a child.  Such an offense is a felony offense.

…

A person commits the offense
of felony murder if he commits or attempts to commit a felony, other than
manslaughter, and in the course of and in furtherance of the commission or
attempt, he commits or attempts to commit an act clearly dangerous to human
life that causes the death of an individual.

… 

A person acts knowingly, or
with knowledge, with respect to a result of his conduct when he is aware that
his conduct is reasonably certain to cause the result.

 

A person acts recklessly or
is reckless with respect to the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the result
will occur.  The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor’s
standpoint.

…

Now bearing in mind the
foregoing instruction, if you believe from the evidence beyond a reasonable
doubt that the Defendant, TIMOTHY PAUL LINER, on or about February 14, 2007, in
the County of Johnson and State of Texas, did then and there knowingly or
recklessly commit or attempt to commit a Felony, to-wit: Injury to a Child, and in the course of and in
furtherance of the commission or attempt, the Defendant knowingly or recklessly
committed or attempted to commit an act clearly dangerous to human life, to
wit: by shaking Tye Liner, or by striking Tye Liner with or against an object
unknown to the Grand Jury, or by manner or means unknown to the Grand Jury,
which caused the death of an individual, namely, Tye Liner, then you will find
the Defendant guilty of the lesser-included offense of Felony Murder and so say
by your verdict.

 

Felony murder is a
lesser-included offense of capital murder.  Fuentes v. State, 991 S.W.2d
267, 272 (Tex. Crim. App. 1999); Gallegos v. State, 715 S.W.2d 139,
142-43 (Tex. App.—San Antonio 1986, pet. ref’d); see also Threadgill v.
State, 146 S.W.3d 654, 665 (Tex. Crim. App. 2004).  And felony murder can
be a lesser-included offense of capital murder when the underlying felony is
injury to a child that includes the culpable mental state of “reckless.”  See,
e.g., Holley v. State, 766 S.W.2d 254, 255-57 (Tex. Crim. App. 1989); see
also Flores v. State, 215 S.W.3d 520, 530 (Tex. App.—Beaumont 2007), aff’d,
245 S.W.3d 432 (Tex. Crim. App. 2008).  The felony-murder charge was not
erroneous.  We overrule Liner’s second issue.

Legal Sufficiency

In his third issue, Liner
asserts that the evidence is legally insufficient to support the felony-murder
guilt finding.  When
reviewing a challenge to the legal sufficiency of the evidence to establish the
elements of a penal offense, we must determine whether, after viewing all the
evidence in the light most favorable to the verdict, any rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781,
2789, 61 L.Ed.2d 560 (1979).  Our
duty is to determine if the finding of the trier of fact is rational by viewing
all of the evidence admitted at trial in the light most favorable to the
verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). 
Any inconsistencies in the evidence are resolved in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

The jury found Liner guilty of felony
murder.  See Tex. Pen. Code Ann.
§ 19.02(b)(3) (Vernon 2003).  Liner suggests that the following evidence
indicates that, “at worst,” he was guilty of manslaughter:[3] 
After the birth of his twins, Liner wrote how happy and lucky he was; Dayna
said that Liner had been a “good dad” who was “great” around children; Dr.
Sisler, the pathologist who performed Tye’s autopsy, testified that he thought
Tye’s head hit a soft object and there was “some shaking with the impact;” and
Liner’s written statement says that he never meant to hurt his son.  The jury is the exclusive judge of the
facts, the credibility of the witnesses, and the weight to be given to the
witnesses’ testimony.  Jaggers v. State, 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d) (citing Penagraph v. State, 623 S.W.2d 341,
343 (Tex. Crim. App. 1981)).  The jury may believe all, some, or none of any
witness’s testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986); Jaggers, 125 S.W.3d at 670.

Moreover, Liner admitted to McGuire and
to Dayna that he shook Tye out of frustration because he would not stop crying,
and the physician testimony was that Tye’s severe inter-cranial injuries were
consistent with severe shaking and Tye’s head possibly hitting a soft object. 
Dr. Sisler said that shaking a baby is dangerous because it causes bleeding and
swelling that leads to death.  Also, Liner was 31 years of age and had children
from a previous relationship, which the State says suggests that Liner was
aware of the substantial and unjustifiable risk of harm in shaking Tye but
consciously disregarded that risk.

Viewing all of the evidence in the light
most favorable to the verdict, we hold that a rational juror could find, beyond a reasonable doubt,
that Liner was guilty of felony murder.  We overrule Liner’s third issue.

Having overruled all of Liner’s issues,
we affirm the trial court’s judgment.

 

 

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed August 25, 2010

Do
not publish

[CRPM]

 









[1] At trial McGuire said that the District
Attorney’s office had requested the urine sample.  There was a suspicion of
drug involvement because marijuana had been found in the Liner apartment.





[2] Citing State v.
Consaul, 960 S.W.2d 680 (Tex. App.—El Paso 1997, pet. ref’d), Liner argues
that McGuire’s seeking a urine sample from Liner is a “ludicrous” notion that was
a pretext to initiate contact with Liner to get him to talk.  The facts of Consaul
are highly distinguishable, and nothing in the record supports Liner’s
allegation.  Moreover, Maldonado, Hughen, and Montejo
control the Sixth Amendment issue.





[3] “A
person commits an offense if he recklessly causes the death of an individual.”  Tex. Pen. Code Ann. § 19.04(a) (Vernon
2003).