**Opinion filed June 25, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00257-CR

_____

## CORNELL ANTHONY PERKINS, Appellant
## V.
## THE STATE OF TEXAS, Appellee

### On Appeal from the 42nd District Court
### Taylor County, Texas
### Trial Court Cause No. 24702A

## M E M O R A N D U M   O P I N I O N

The jury found Cornell Anthony Perkins guilty of the offenses of burglary of a habitation and aggravated assault.[1] The trial court assessed punishment and sentenced Appellant to confinement for thirty-five years for the burglary of a habitation and confinement for twenty years for the aggravated assault, to run concurrently. Appellant appeals on two grounds. We affirm.

---

[1]*See* TEX. PENAL CODE ANN. §§ 22.02(a), 30.02(a) (West 2011).

## I. *Background Facts and Procedural History*

Appellant does not challenge the sufficiency of the evidence, so we will only give a brief recitation of the facts. Appellant and A.W. both lived at the same apartment complex. A.W. headed back to her apartment from the pool one morning. As she unlocked her door, she heard a man's voice from behind her tell her to "go in." The man forced A.W. into the apartment, grabbed A.W. by her ponytail, and hit her head on a closet door. The struggle continued into the living room where the man cut and ripped A.W.'s clothes off. The man tried to choke A.W. with a laptop computer cord, but A.W. escaped down the hallway to her bedroom, where she closed and locked the door. She grabbed a shotgun from the closet while the man kicked the door. Without loading the shotgun, A.W. opened the door and pointed the barrel of the shotgun at the man's face. The man ran away. A.W. called the police, and the police came to her apartment and interviewed her. The police subsequently met with Appellant at his apartment.

Detective John Wilson asked Appellant if he would go to the police station, and Appellant voluntarily went. At the station, Detective Wilson informed Appellant of his *Miranda*[2] rights before Detective Wilson interviewed him. Appellant waived his rights and spoke to Detective Wilson, and Appellant stated he was in his apartment all morning. After an unsuccessful photo lineup,[3] Detective Wilson arranged a live lineup, which Appellant agreed to, and A.W. identified Appellant as her assailant. Detective Wilson subsequently arrested Appellant. Detective Wilson testified that Appellant requested a follow-up meeting.

---

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[3]Detective Wilson explained that photo lineups are produced from a suspect's driver's license photo. Appellant did not have a driver's license, so Detective Wilson attempted to create a similar photo of Appellant. When shown the photo lineup, A.W. pointed at Appellant's picture but did not verbally choose Appellant from the photo lineup.

At Appellant's Article 15.17[4] magistrate hearing, Appellant requested that an attorney be appointed to represent him. A few days later, Jerry Lesikar, an agent with the Texas Department of Public Safety, met with Appellant. Agent Lesikar did not determine whether Appellant had an attorney representing him, but Agent Lesikar informed Appellant of his *Miranda* rights. Appellant waived his rights and spoke with Agent Lesikar. Later in the interview with Agent Lesikar, Appellant signed a statement, which outlined that Appellant went into A.W.'s apartment at her request; that A.W. undressed and asked Appellant to tie her up with a cord; and that, when Appellant felt like he would hurt A.W., he refused to continue. At that point, A.W. pointed a shotgun at Appellant, and Appellant left the apartment. Appellant objected to the admission of his statement on the ground that he did not give it voluntarily, but the trial court overruled the objection and admitted the statement.

Appellant's trial counsel filed a motion for a competency examination. An affidavit in support of the motion stated that Appellant's family had told his trial counsel about Appellant's mental health issues and that trial counsel "was advised that [Appellant] had previously had an I.Q. test administ[ered] in 2008 tha[t] showed an I.Q. of 53." Appellant's trial counsel withdrew the motion a few days later based on "consultation with [Appellant] and his family."

## II. *Issues Presented*

Appellant contends in his first issue that Agent Lesikar violated his Fifth, Sixth, and Fourteenth Amendment rights when he interviewed Appellant after Appellant had received an Article 15.17 hearing and had requested appointment of counsel. In his second issue, Appellant asserts that he received ineffective assistance of counsel.

---

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 15.17 (West 2015).

3

### III. *Standard of Review*

For Appellant's contention that the State violated his Fifth and Sixth Amendment rights, we conduct a bifurcated review as articulated in *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn on credibility and demeanor. *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012). We review, under a de novo standard, the trial court's rulings on application of law to fact questions that do not turn on credibility and demeanor. *Id.* at 79. We review the totality of the circumstances from the viewpoint of an objectively reasonable police officer to determine whether an accused invoked his right to counsel. *Id.* For Appellant's ineffective-assistance-of-counsel claim, we apply the well-recognized standard of review from *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

### IV. *Analysis*

#### A. *Issue One: Right to Counsel*

Appellant contends that Agent Lesikar violated his federal constitutional rights when he interviewed Appellant without Appellant's attorney being present. Appellant argues this violation resulted in his written statement, which made the statement inadmissible.

The Fifth Amendment right to counsel protects a criminal suspect against self-incrimination in custodial interrogations. *Pecina*, 361 S.W.3d at 74–75. The State must give the suspect *Miranda* warnings, and the suspect must voluntarily and intelligently waive his *Miranda* rights before questioning. *Id.* at 75. If a suspect invokes his right to have counsel present during custodial interrogations, he must initiate any further communication with the State and again voluntarily and intelligently waive his *Miranda* rights before any questioning in the absence of counsel. *Cross v. State*, 144 S.W.3d 521, 526–27 (Tex. Crim. App. 2004).

The Sixth Amendment right to counsel guarantees "a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Pecina*, 361 S.W.3d at 77 (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)) (internal quotation marks omitted). A request for an attorney at an Article 15.17 hearing is a request for representation at all judicial criminal proceedings; it is not an anticipatory request for counsel at all future police-initiated custodial interrogations. *Id.* at 78. If a defendant wishes to invoke his Sixth Amendment right to counsel "during the 'critical stage' of post-arraignment custodial interrogation," he may do so under *Miranda* when the State begins the custodial interrogation, as he would waive his Fifth Amendment right to counsel. *Id.* Furthermore, a defendant may unilaterally waive his right to counsel, after the attorney-client relationship has been formed, by initiating the communication himself. *State v. Maldonado*, 259 S.W.3d 184, 188–89 (Tex. Crim. App. 2008).

Detective Wilson testified that, after Appellant's arrest, Appellant asked to speak to the police. Before the second interview with police, Appellant had an Article 15.17 hearing and requested appointment of counsel. Agent Lesikar testified that he later met Appellant and read Appellant his *Miranda* rights; Appellant then waived his rights, signed a statement that he waived his rights, and spoke to Agent Lesikar. No evidence exists in the record that Appellant invoked his Fifth or Sixth Amendment right to counsel during his interrogations.

Although Appellant asked to be appointed counsel at his Article 15.17 hearing, that request did not extend to any future custodial interrogations. *See Pecina*, 361 S.W.3d at 77–78. Appellant also did not invoke his right to have counsel present during any of his interviews, including his interview with Agent Lesikar. Instead, Appellant requested the meeting and waived his *Miranda* rights before Agent Lesikar took his statement. *See id.* Agent Lesikar's interview did not violate Appellant's Fifth or Sixth Amendment right to counsel because the evidence shows

5

that Appellant initiated this communication and validly waived his *Miranda* rights before the interview. *See Maldonado*, 259 S.W.3d at 188–89; *Cross*, 144 S.W.3d at 526–27.

Even if the State had initiated the interview that produced Appellant's written statement, Appellant did not invoke his right to have counsel present and had not invoked his right previously, so the State did not violate Appellant's right to counsel. *See Pecina*, 361 S.W.3d at 77; *Cross*, 144 S.W.3d at 526–27. We defer to the trial court's ruling that Appellant voluntarily and intelligently waived his rights because that ruling turns on the credibility and demeanor of the witnesses. *See Pecina*, 361 S.W.3d at 78–79. The trial court did not err when it admitted Appellant's written statement.

In addition, Appellant has presented no arguments or briefing on his Fourteenth Amendment rights; therefore, he has waived those arguments. *See* TEX. R. APP. P. 38.1(i); *Knight v. State*, 406 S.W.3d 578, 590 (Tex. App.—Eastland 2013, pet. ref'd) (holding that, because the appellant had not adequately briefed his position, he waived any argument). We overrule Appellant's first issue.

### B. *Issue Two: Ineffective Assistance of Counsel*

Appellant asserts that his trial attorney's performance was ineffective because it fell below a reasonable standard when trial counsel withdrew the motion for a competency examination. Appellant further asserts that his trial counsel prejudiced his defense because, had Appellant been examined, the results of the competency examination would have shown that Appellant could not intelligently waive his right to counsel, which would have rendered his confession involuntary and inadmissible and would have produced a different outcome.

The benchmark for evaluating an ineffective-assistance-of-counsel claim is whether the conduct of counsel "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

6

*Strickland*, 466 U.S. at 686. The *Strickland* test comprises two prongs: (1) a performance standard and (2) a prejudice standard. *Id.* at 687. For the performance standard, we must determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness. *Id.* If so, we then determine whether a reasonable probability exists that the outcome would have differed but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 686; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Andrews*, 159 S.W.3d at 101. A reviewing court need not consider both prongs of the *Strickland* test and can dispose of an ineffectiveness claim on either prong. *Walker v. State*, 406 S.W.3d 590, 594 (Tex. App.—Eastland 2013, pet. ref'd) (citing *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012)); *see Strickland*, 466 U.S. at 697.

The first prong of *Strickland* requires Appellant to establish that trial counsel provided deficient assistance of counsel. A strong presumption exists that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd). To overcome this deferential presumption, an allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Usually, a silent record that does not explain counsel's actions will not overcome the strong presumption of reasonable assistance. *Id.* Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—

Eastland 2005, pet. ref'd). The record on direct appeal will not normally show that trial counsel's representation was so lacking as to overcome the presumption of reasonable conduct. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

We do not inquire into the wisdom of a trial strategy unless no plausible basis exists for trial counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. [Panel Op.] 1981). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient unless his actions were so outrageous that no competent attorney would have engaged in them. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003).

Appellant's trial counsel stated, without a detailed explanation, that he withdrew his motion for a competency examination based on his consultation with Appellant and Appellant's family. We cannot conclude, without more in the record, that counsel's withdrawal of the motion constituted deficient performance, and we cannot conclude that it was so outrageous that no competent attorney would have done so. *See Goodspeed*, 187 S.W.3d at 392; *Jackson*, 877 S.W.2d at 771. We do not reach the prejudice prong of *Strickland* because Appellant has failed to satisfy the deficient-performance prong. *See Perez*, 310 S.W.3d at 893. We overrule Appellant's second issue.

## V. *This Court's Ruling*

We affirm the judgments of the trial court.

June 25, 2015                                              MIKE WILLSON

Do not publish. *See* TEX. R. APP. P. 47.2(b).          JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

8