

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00030-CR

———————————————

DAMION MCKINNEY, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1779711

---

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

## I. Introduction

The State presented evidence that on May 6, 2023, a black male wearing glasses and driving a blue car with license plate SCT 1387 robbed Ricky Sims outside of a used car lot. Sims testified that the bespectacled robber was armed and accompanied in that vehicle by an armed black female with a masculine appearance and by an armed "light-skinned" black male in the used red Corvette that Sims had sought to purchase. Sims identified Appellant Damion McKinney at trial as the blue car's driver.

The State's evidence also included gas station surveillance video of the blue car and its driver eight minutes from the scene just before the offense occurred and body camera footage of a traffic stop three days after the robbery, showing McKinney as the blue car's driver. The officer who conducted the traffic stop identified McKinney at trial and testified that the blue car's passenger was a black female with a masculine appearance. The crime scene officer who subsequently searched the blue car pursuant to a warrant testified that she located McKinney's driver's license in a wallet in the driver's side door, and her photo of his driver's license was admitted into evidence and published to the jury.

McKinney, in an interview that occurred before his arrest, admitted to the investigating detective that he was the blue car's driver and had been at the robbery scene, but he did not admit to any involvement in the robbery. After this interview, the detective put McKinney's photo into a photo lineup from which Sims identified

McKinney as one of the robbers with "a hundred percent" certainty. During Sims's cross-examination, McKinney's counsel offered, and the trial court admitted, the photo lineup, which showed McKinney as the only suspect wearing glasses. The detective did not write the robbery arrest warrant for McKinney until after (1) Sims picked him from the lineup, (2) McKinney admitted having been at the scene, and (3) the gas station surveillance video confirmed McKinney's presence near the scene that day. The detective also testified that when he interviewed McKinney after his arrest, McKinney asked him about "making a barter" in the case.

Despite his "not-guilty" plea, a jury found McKinney guilty of aggravated robbery with a deadly weapon, a first-degree felony. *See* Tex. Penal Code Ann. § 29.03. McKinney also pled "not true" to the enhancement allegations of two prior and sequential final felony convictions, but the trial court found the allegations true and then sentenced him to 35 years' confinement. *See id.* § 12.42(d).

In four issues, McKinney complains that the trial court erred by (1) denying him due process when it allowed Sims to identify him in court after an impermissibly suggestive photo lineup; (2) admitting the gas station surveillance video based on improper authentication; (3) admitting his statements made during a custodial interrogation without a voluntariness finding; and (4) failing to grant a mistrial after the detective made "prejudicial statements regarding [his] being in custody." In an unnumbered issue, he also argues that the above cumulatively violated his right to a fair trial.

Because the record reflects no preservation of McKinney's first and fourth issues, no abuse of discretion in his second and third issues, and thus no error to accumulate in his unnumbered issue, we affirm the trial court's judgment.

## II. Identification

In his first issue, McKinney argues that allowing Sims to make an in-person identification of him at trial violated his right to due process because Sims admitted that he had a limited time to view his robbers and described one of them as "a person with glasses and dark skin" and Fort Worth Police Detective Kenyon Willingham presented him with a lineup with McKinney as the only person wearing glasses.

The State responds that because the trial court never ruled on this issue, it is not preserved for our review. The State points out that McKinney did not file a written pretrial motion to suppress; that, when McKinney orally moved to suppress the in-court identification at trial, the trial court denied it as untimely; that McKinney does not complain about that ruling in this appeal; and that McKinney did not object to Sims's in-court identification of him. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (stating that an error in the admission of evidence is cured when the same evidence comes in elsewhere without objection); *see also* Tex. R. App. P. 33.1 (setting out how to preserve error); *Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008) (noting that a defendant can challenge evidence's admissibility either by objecting to its admission when it is offered at trial and requesting a hearing

4

outside the jury's presence or by filing a pretrial motion to suppress and having it heard and ruled upon before trial).

Even assuming, for argument's sake, that McKinney had preserved this complaint for our review,[1] the trial court admitted the following unobjected-to evidence at trial that proved McKinney's identity as one of Sims's robbers:

- Sims testified that he was robbed at gunpoint on May 6, 2023, between 4:21 p.m. (the time his Uber arrived at the used car lot) and 4:25 p.m. (the time of his first 911 call). In the 911 call, Sims gave the blue car's license plate number and described its driver as a black guy "with some glasses on."

- McKinney was not wearing glasses at trial. The prosecutor asked Sims, "Even though he's not wearing glasses, do you still recognize him as the driver of that blue car?" Sims replied, "He could put a wig, makeup on, I could recognize him."

- During Sims's cross-examination, McKinney's counsel offered, and the trial court admitted, the photo lineup containing McKinney,[2] allowing the jury to compare his lineup appearance to his trial appearance.

---

[1]After voir dire but before opening statements, McKinney's counsel orally moved to suppress Sims's in-court identification of him based on "an impermissibly suggesti[ve] lineup." The State objected that the motion was untimely, and the trial court sustained that objection. The State later offered for the record a copy of court procedures and the pretrial waiver. The court procedures require bringing any pretrial matters that will require a hearing to the trial court's attention "immediately upon receipt of the setting notice," and the pretrial waiver states, "We hereby agree that there are no pre-trial matters that require testimony or pre-trial motions that are potentially case dispositive that need to be addressed with the Court regarding the above referenced matter," and it was signed by the prosecutor and defense counsel in August 2024. Trial began on January 27, 2025.

[2]McKinney's counsel attempted to turn the lineup into part of his trial strategy. During his opening statement, he informed the jury that the evidence would show an impermissibly suggestive lineup because "only Mr. McKinney was wearing glasses" and advised the jury, "It's easy enough to generate a lineup with similar features and similar characteristics like everybody wearing glasses, but that's not what they did."

- Body camera video of the traffic stop three days after the robbery showed that McKinney was the driver of the blue car with license plate SCT 1387. The video allowed the jurors to compare Sims's testimony, in-court identification, and 911-call description to McKinney's appearance three days after the offense and to compare for themselves this evidence with McKinney's appearance at trial.

- McKinney's driver's license—showing him without glasses—was found with him in the blue car during the traffic stop three days after the robbery, again allowing the jurors to compare his appearance to the above description.

- Gas station surveillance video showed McKinney and the blue car with license plate SCT 1387 immediately before the robbery and near the scene, again allowing the jury to compare his appearance to the other evidence presented at trial.

- Detective Willingham testified that McKinney had admitted to him that he had driven the blue car and had been at the robbery scene on May 6, 2023, and he stated that he did not include McKinney in the photo lineup until after he both spoke with McKinney and confirmed McKinney's whereabouts that day at the gas station near the crime scene before the robbery.

In light of the above, even if McKinney had preserved this complaint, *see* Tex. R. App. P. 33.1, any error from the photo lineup would be harmless,[3] and we overrule his first issue.

---

During Sims's cross-examination, McKinney's counsel asked Sims, "Do you know why they wouldn't show you six photos with . . . kind of like-appearing guys with glasses," and Sims replied, "You got to ask them. I described to the T." The investigating detective acknowledged during cross-examination that the risk of preparing a lineup in which only one person has a distinguishing characteristic could result in a misidentification. During closing arguments, McKinney's counsel argued that the lineup was "completely suggestive."

[3]Suggestive line-ups or in-court identifications after such lineups are reviewed to determine whether they give rise to a very substantial likelihood of misidentification based on the totality of the circumstances. *See Neil v. Biggers*, 409 U.S. 188, 196–98, 93 S. Ct. 375, 380–82 (1972) (citing *Stovall v. Denno*, 388 U.S. 293, 301–

## III. Authentication

In his second issue, McKinney complains that the trial court abused its discretion by admitting State's Exhibit 17, the gas station surveillance video, because it was not properly authenticated when the State "failed to produce a witness to testify to the authenticity of the video . . . or that [it] had not in any way been altered or edited," in violation of Rule of Evidence 901. The State responds that the trial court did not abuse its discretion by admitting the video after sufficient evidence was offered to support its authenticity when Detective Willingham testified that he obtained the security footage from the gas station and did not alter it and when McKinney "can be seen in the footage driving the same car used for the robbery."

### A. Background

Detective Willingham testified that he tracked the blue vehicle to a QuikTrip (QT) gas station and requested video from QT for the offense date of May 6, 2023. When the prosecutor asked him if State's Exhibit 17 was a fair and accurate copy of the video he received from QT from that date, Detective Willingham replied, "Yes, sir," and when the prosecutor asked him if it had been altered or changed in any way since he received it, he replied, "No, sir." Defense counsel objected to the video's admission, stating, "There's no testimony that this is a fair and accurate depiction of

02, 87 S. Ct. 1967, 1972 (1967), and *Simmons v. United States*, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968)). The central question is whether an identification is reliable despite a suggestive confrontation procedure. *Id.* at 199, 93 S. Ct. at 382. The record here, containing ample corroborative evidence, reflects the reliability of McKinney's pretrial and in-court identifications by Sims as one of the robbers.

the events that are recorded on that date. We would require somebody from QT to authenticate the video . . . ." The prosecutor responded that the detective had received the video directly from QT and did not need to be present at the location to authenticate that it was what it appeared to be. The trial court overruled McKinney's objection and admitted the video.

**B. Applicable law**

Under Rule of Evidence 104(a), whether to admit evidence is a preliminary question for the trial court, and Rule of Evidence 901(a) defines authentication as an admissibility "condition precedent" that requires the proponent to make a threshold showing that would be "sufficient to support a finding that the matter in question is what its proponent claims." *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012) (citing Tex. R. Evid. 104(a), 901(a)). In performing its Rule 104 gate-keeping function in a jury trial, the trial court must be persuaded that the evidence's proponent has supplied facts sufficient to support a reasonable jury's determination that the evidence is authentic. *Id.* at 638. "Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Id.* "Testimony of a witness with knowledge" is "[t]estimony that an item is what it is claimed to be." Tex. R. Evid. 901(b)(1).

The Court of Criminal Appeals has been asked to determine whether a video's proponent may sufficiently prove its authenticity "without the testimony of someone

8

who either witnessed what the video depicts or is familiar with the functioning of the recording device," and has concluded that, "yes, it is possible." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018). In *Fowler*, police found a Family Dollar store receipt near a burglarized building; the receipt was date- and time-stamped and listed some of the equipment used in the burglary. *Id.* at 846. They went to the store and requested surveillance footage from the receipt's date and time. *Id.* The store's manager retrieved a video stamped with the same date and time as the receipt. *Id.*

As here, at trial, defense counsel objected that "[t]hey need somebody from the Family Dollar store" to support the video's admissibility. *Id.* However, after the sponsoring officer testified that the video had the same date and time that was on the receipt, the trial court admitted it, and then the officer testified that the customer on the video was the defendant, who was holding in his hand some cutters—one of the items on the receipt. *Id.* at 847–48.

The court noted, "even though the most common way to authenticate a video is through the testimony of a witness with personal knowledge who observed the scene, *that is not the only way*." *Id.* at 849. Evidence can also be authenticated by the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances. *Id.* Because video recordings without audio are treated as photographs and are properly authenticated when it can be proved that the images accurately represent the scene in question and are relevant to the disputed issue, the trial court did not abuse its discretion when the State

9

authenticated the video with (1) the officer's in-person request of the store manager to pull the surveillance video on a certain date at a certain time; (2) the distinctive characteristic that there is a date and time stamp on the video; (3) the fact that the video's date and time correspond to the date and time on the receipt found near the crime scene; and (4) the fact that the video pulled by the store manager reveals the defendant at the store on that date at that time purchasing the items listed on the receipt. *Id.* at 849–50 (holding that trial court's determination that the officer supplied facts sufficient to support a reasonable jury determination that the video was authentic was a decision within the zone of reasonable disagreement and thus no abuse of discretion).

## C. Analysis

Based on Detective Willingham's testimony and the QT video's contents, which showed the blue car with license plate SCT 1387 and its driver, a black male wearing glasses, near the robbery scene between 3:43 p.m. and 3:48 p.m., the trial court could have reasonably determined that the QT video was sufficiently authentic to admit it to the jury and thus did not abuse its discretion. *See id.* We overrule McKinney's second issue.

## IV. Custodial statements

In his third issue, McKinney argues that the trial court erred by allowing Detective Willingham to testify about his statements in custodial interrogation in violation of his right to counsel, rendering his statements involuntary. He asserts that

10

there is "no evidence that [he] made an intelligent, voluntary[,] and knowing waiver of his right to counsel when the Detective met with him in jail in the absence of his counsel." The State responds that the evidence at the trial court's Article 38.22 hearing showed that McKinney knowingly and intelligently waived his right to have counsel present during questioning and that he spoke with the detective willingly when Detective Willingham met with him after McKinney asked to speak to the detective and clearly waived his rights.

## A. Background

Detective Willingham testified that when he spoke with McKinney for the second time, McKinney had been under arrest for the aggravated robbery and had asked to speak with him. After a defense objection to this testimony, the trial court held a hearing under Code of Criminal Procedure Article 38.22 outside the jury's presence at defense counsel's request.

During the Article 38.22 hearing, Detective Willingham testified that McKinney had been in custody before the second interview, that he had read to McKinney his *Miranda* rights, that this was recorded on the detective's body camera in State's Exhibit 44, and that McKinney had answered that he understood the warnings and voluntarily waived them. The prosecutor then advised the trial court that the State did not intend to play the body camera video or to introduce it but rather to ask Detective Willingham about the questioning and McKinney's request to barter in the case.

11

Defense counsel objected that there had been no affirmative waiver of McKinney's rights to proceed with the interview and that the detective had known that McKinney was represented by counsel, making it an improper contact with a represented defendant and thus inadmissible. The prosecutor replied that McKinney had asked to speak with the detective and "very clearly waived his rights, and the detective made him answer verbally yes to every single waiver." The trial court reviewed that portion of the video and overruled the admissibility objection, finding orally that Article 38.22, Section 3 had been complied with and allowing the prosecutor to go into some of the questioning "since the State is not going to actually play the video." The trial court also granted to McKinney a running objection.

Before the jury, Detective Willingham testified that McKinney had asked to speak with him, that he had read the *Miranda* warnings to McKinney, that McKinney had waived his rights, and that McKinney—in his own words—had asked about "making a barter" in the case, which the detective understood meant that McKinney had information about the offense and was showing his consciousness of guilt.

## B. Applicable law

The Sixth Amendment right to counsel applies in all state criminal prosecutions in which the defendant is accused of a felony, and once the adversarial judicial process has been initiated, the Sixth Amendment right to counsel guarantees the accused the right to have counsel present at all "critical" stages of the criminal proceeding. *Hughen v. State*, 297 S.W.3d 330, 334 (Tex. Crim. App. 2009). Interrogation by police after

12

charges have been brought is such a critical stage. *Id.* But the Sixth Amendment right to have counsel present during interrogation, once the adversarial judicial process has been initiated, may be waived, as long as the waiver is voluntary, knowing, and intelligent. *Id.* at 334–35. And when an accused is read his *Miranda* rights, which include the right to have counsel present during interrogation, and he agrees to waive those rights, that typically suffices to validly waive the Sixth Amendment right to have counsel present during interrogation. *Id.* at 335. Further, to show a Sixth Amendment violation, the defendant must demonstrate that the police took some action, beyond mere listening, that was designed to deliberately elicit incriminating remarks. *State v. Maldonado*, 259 S.W.3d 184, 191 (Tex. Crim. App. 2008) (stating that when the defendant initiated the communication with the officer, he was "in a position to unilaterally waive his Sixth Amendment right to counsel").

Article 38.22 sets out rules governing the admissibility of an accused's statements that are the product of custodial interrogation. *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008). Section 3 of Article 38.22 applies to an accused's custodial-interrogation statements and provides that only "warned and waived" statements may be admitted. *Id.* That is, an accused's custodial-interrogation statement is not admissible unless, before making the statement, he "received the warnings provided in Article 15.17 or Article 38.22, [Section] 2(a) or [Section] 3(a) (which incorporate the requirements of *Miranda*), and he knowingly, intelligently, and voluntarily waived those rights." *Id.* at 171–72; *see also* Tex. Code Crim. Proc. Ann. art.

13

38.21 ("A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion.").

**C. Analysis**

We have reviewed State's Exhibit 44, body camera video that shows that Detective Willingham gave McKinney his *Miranda* warnings and that McKinney acknowledged that he understood each of those warnings before the detective asked him what McKinney wanted to talk with him about. Because the trial court could have reasonably found from viewing the video that McKinney had made a knowing, intelligent, and voluntary waiver of his rights by opting to speak with Detective Willingham after he received his *Miranda* warnings, there was no Sixth Amendment or Article 38.22 violation when Detective Willingham subsequently testified about McKinney's statements.[4] We overrule McKinney's third issue.

## V. Mistrial

In his fourth issue, McKinney complains that the trial court erred by failing to grant a mistrial after Detective Willingham's testimony that he was in custody in the county jail, violating his right to the presumption of innocence. He asserts, "In the instant case, the universe of inferences that a jury could draw from the admission of

---

[4]Further, considering the overwhelming evidence of McKinney's identity as one of the robbers, the fact issue for the jury was whether McKinney had committed *armed* robbery, as charged in the indictment and testified by Sims, or robbery *without guns*, as testified by another witness and included as a lesser-included offense in the jury charge.

14

testimony that [he] was being detained in the county jail is limited to [his being] dangerous[] or . . . culpable for this charge or another charge."

The State responds that the trial court did not abuse its discretion when Detective Willingham had already testified, without objection, that the interview took place after McKinney's arrest, making McKinney's location in county jail after his arrest redundant and any added prejudice de minimis, particularly when the jury is presumed to have followed the trial court's instruction to disregard.

During Detective Willingham's direct testimony, the following dialogue ensued:

Q. [Prosecutor:] *And after the Defendant was arrested for this offense*, did you later speak with him again?

A. Yes, sir.

Q. And was that conversation a little bit different than your first one?

A. Yes, sir.

Q. How so?

A. This time, we were -- *he was in County at the time*, and I went to talk to him.

[Defense counsel]: Judge, I object to the witness referring to my client as being in County.

THE COURT: Sustained.

[Defense counsel]: Ask that the jury disregard.

THE COURT: The jury will disregard the last answer.

[Defense counsel]: And we'll request a mistrial.

15

THE COURT: Overruled. [Emphases added.]

A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). However, here, in addition to Detective Willingham's unobjected-to testimony that the interview occurred after McKinney's arrest, the record also reflects that during Detective Willingham's cross-examination by McKinney's defense counsel, the "county" reference occurred again with no objection, request for an instruction to disregard, or motion for mistrial:

> Q. [Defense counsel:] Okay. And at that time, Mr. Sims had not made any sort of identification. I think you testified to that earlier. That came after your interview with Mr. McKinney, correct?
>
> A. Which time? Okay. So which interview are you referring to, because I --
>
> Q. The first one.
>
> A. -- interviewed him a couple times.
>
> Q. The first one.
>
> A. After -- so the first time, no, he had not identified him yet.
>
> Q. Right. And you told Mr. McKinney that someone was putting his name in something, correct?
>
> A. Correct.
>
> Q. And that wasn't true, right?

16

A. *Are you referencing when he was in County when I was interviewing him?*

Q. No.

A. Is that the interview you're talking about?

Q. No. I'm talking about the first time that you interviewed him.

A. Okay. Yes, sir. [Emphasis added.]

Because the record reflects that the same information was admitted without objection, *see Ethington*, 819 S.W.2d at 858, we overrule McKinney's fourth issue.

## VI. Cumulative error

In a cumulative-error analysis, we consider only errors that were preserved for appeal and that were actually errors. *Schmidt v. State*, 612 S.W.3d 359, 372 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *see Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (stating that the doctrine does not apply to non-errors). As set out above, McKinney failed to preserve some of his complaints and the rest showed no abuse of discretion. Accordingly, we overrule McKinney's unnumbered remaining issue.

## VII. Conclusion

Having overruled all of McKinney's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 15, 2026

17